## BATTELLE MEMORIAL INSTITUTE, In re.

Common Pleas Court, Franklin County.

No. 196819.   Decided July 20, 1960.

Albert R. Teare, Cleveland, and Phillip K. Folk, Columbus, for the Court's Committee.

Wright, Harlor, Morris, Arnold & Glander, Mr. Francis J. Wright, Columbus, for Respondent, Battelle Memorial Institute.

### OPINION

By MARSHALL, J.

### THE ISSUE

The sole issue is whether Battelle Memorial Institute is engaged in the unauthorized practice of law.  More specifically, are the members of its legal department and patent section engaged in the unauthorized practice of law?

### ORGANIZATION OF BATTELLE

Battelle is a nonprofit corporation, organized to conduct scientific research for itself, for the United States government, and for clients engaged in private industry, called "Sponsors."  The complaint of unauthorized practice of law in this action is limited to acts done in connection with such "Sponsors."

Battelle has a staff of some 2,300 employees, about 1,200 of whom are scientists. It has some fifty divisions divided into seven departments. Its total business in 1959 was about $23,000,000.

The legal department of Battelle consists of seven members.  Five members of this department are licensed to practice law in Ohio, and one is a lawyer admitted to practice in Colorado.

The legal department contains a patent section which specializes in the field of inventions and patents.  Four men devote all their time to patent matters, and two devote about half of their time.  Four members of the legal department (all attorneys) are registered in the U. S. Patent Office under the firm name of Gray, Mase & Dunson.

Because of the possibility that research of any kind might, and often does, include the possibility of a new invention and the obtaining of a new patent, every employee of Battelle, before being hired, is required

to sign an agreement which obligates the employee to assign any and all inventions made by such employee to Battelle. Under the patent law, an application for a patent must be filed in the name of the inventor.

Every agreement with an industrial sponsor refers to Battelle's agreement with its employees, which requires them to assign their inventions to Battelle, and includes (in the agreement with such sponsor) a provision that if an invention is made during the course of the research on sponsor's project Battelle will notify the sponsor of this fact and permit the sponsor, at its election, to have such application and all rights to the invention assigned by Battelle to such sponsor. If the sponsor does not elect to exercise its option, Battelle remains the owner of the invention (after assignment by the inventor) and would normally complete the patent. The patent section files and processes the application for a patent until such time as a sponsor elects to take an assignment thereof. In such event, the sponsor has the option of further processing the application with counsel of its own choosing.

The members of the legal department of Battelle are paid salaries by Battelle. By agreement with each sponsor, the expense of each project is paid by the sponsor. The time spent by each staff member of Battelle on each project, including scientists and members of the patent section, is kept and charged to the sponsor at a rate based upon the salary being paid to the persons performing the services.

The only tribunal in which members of the patent section work is the U. S. Patent Office. They appear in no courts of law, nor do they participate in any court proceedings.

### WORK DONE BY LEGAL DEPARTMENT

As a part of its research in connection with inventions and patents, the members of the legal department perform a variety of office work. They prepare opinions and legal instruments, compose letters in connection therewith, make reports, prepare briefs, and do many other types of office work. They also prepare documents to be filed in the U. S. Patent Office in connection with applications for patents and inventions. (See detailed list, as set forth in committee's application, appended hereto.)

### CONTENTION OF COMMITTEE

It is the contention of the committee that the members of the legal department of Battelle, and especially those working in the patent section, are engaging in the unauthorized practice of law for others, namely, sponsors, when they prepare and issue opinions, legal instruments, and letters which include interpretation of legal rights, such as patentability of inventions, quoting decisions of courts, and interpreting statutes of the various states.

### CONTENTION OF BATTELLE

Battelle insists that the members of its legal department, and especially those who do work in the patent section, are working on a salary for Battelle, doing work for Battelle as their client, that they are doing no legal work for others of an unauthorized nature, and that the work they do is highly specialized in the field of patents and inventions, consisting for the most part in research and only to a limited part in law restricted to a limited field. They point out that the only tribunal in which they practice is the U. S. Patent Office, where the practice

is not limited to attorneys, and that all the office work done in Columbus points to, and is related solely to, the eventual obtaining of patents as the result of inventions developed by its employees in connection with their research, including research for sponsors.

## SCOPE OF CHARGE

When we speak of unauthorized practice of the law, we must consider:

(1) Who is charged.

(2) The type of work performed.

(3) For whom the work is performed.

(4) Is such work the unauthorized practice of law?

### (1) WHO IS CHARGED

In the first place, Battelle is under a charge in this case. Being a corporation, it cannot, as such, practice law in Ohio. The charge of the committee is that Battelle is indirectly practicing law in Ohio by hiring lawyers and nonlawyers to work in its legal department and patent section, who, in turn, furnish legal services to others, namely, sponsors, in an unauthorized manner.

While the unauthorized practice of law might include unlawful appearances before the courts, that type of practice is not here under consideration. There is no evidence here of any such type of practice. The only tribunal before which any employee of Battelle appears is the U. S. Patent Office, which, incidentally, has its own requirements as to who may practice before it.

The type of unauthorized practice complained of in this case is, for the most part, the kind known as office practice, including such fields as the advising of persons as to their legal rights, rendering legal opinions, and the drafting of legal instruments, as more particularly set forth in the Committee's Application, filed November 16, 1957. (See Appendix.)

The committee's complaint against Battelle is not limited to the nonlawyer members of its legal department or patent section. Nor is it limited to the lawyer staff members who are not admitted to the practice of law in Ohio. We perceive that the complaints would be substantially the same even if all members of the legal department and patent section were attorneys licensed to practice law in Ohio. The real complaint is that members of the legal department and patent section, all of whom are salaried employees of Battelle, are performing legal services for sponsors without the proper attorney-client relationship, and therefore, are engaged in the unauthorized practice of law.

### (2) THE TYPE OF WORK PERFORMED

The evidence in this case discloses the work which needs to be done, and is done, in connection with research for sponsors. It also discloses the work done in connection with patents and inventions which may develop out of such research.

Admittedly, much of such work is pure research. A great deal of it is highly specialized work of great complexity, requiring study, extensive knowledge and skill.

On the other hand, the work required to process an application

for an invention or patent is, for the most part, legal work. Without attempting to enumerate all types of such work, we would merely mention such recognized legal work as the drafting of contracts, applications, affidavits and assignments, the rendering of opinions as to patentability, infringement and interference, and the giving of advice as to the rights and duties of persons and corporations. (See **Land Title Abstract & Trust Co. v. Dworken, 129 Oh St 23.**)

### (3) FOR WHOM THE WORK IS PERFORMED

The committee does not complain of the work of the legal department and patent section, so far as it is limited to research work or legal work performed solely for Battelle as the real employer and client of such staff workers. It does complain of such work when it is performed for sponsors, whom it claims are parties other than the real employer and client of members of the staff.

The Answer of Battelle alleges in part as follows:

"2. Battelle denies that acting through its agents, employees and attorneys, it contracts to or renders any services for others which could be construed or considered as practicing law. * * *

"* * *

"6. * * * In all cases the services performed by members of its patent section are performed solely for Battelle."

The terms of the sponsor-Battelle contract should be considered.

Paragraphs 2, 3 and 4 of such contract form read as follows:

"2. In consideration of BATTELLE'S carrying on the above mentioned research project, the SPONSOR agrees to pay the research costs, including the following:

"a. Staff costs.

"b. Undistributed expense in the amount of seventy-four per cent (74%) of staff costs.

"c. Purchases of materials, supplies, services, special equipment, and any miscellaneous expenses necessary for said project.

"d. Standard rates for use of technical equipment, special facilities, services of technical service divisions and research divisions, as required for said project.

"e. Travel directly applicable to said project.

"It is agreed that said costs shall not exceed a total of _____ Dollars ($_____) payable

"3. BATTELLE agrees that all information obtained by Battelle through the work on the project specifically defined above shall be made available to the SPONSOR at any reasonable time during BATTELLE'S working hours subject to the terms and conditions of this agreement, and that BATTELLE will communicate to the SPONSOR, promptly without request, all information pertinent to the project as it progresses.

"4. BATTELLE represents that each of its employees has entered into a contract of employment which provides for assignment to BATTELLE of all inventions made by said employee during the course of his employment.

"BATTELLE agrees that if, during the period of this agreement, as

specified in paragraph 1 hereof, any of its employees shall make an invention while working on this project, BATTELLE will promptly make such invention known to the SPONSOR and upon the request and at the expense of the SPONSOR, and through attorneys named by the SPONSOR, said employee shall make application for letters patent and BATTELLE agrees to assign said application and any and all rights to said invention to the SPONSOR under the conditions of this agreement. It is mutually agreed that any expense for the filing and assignment of applications for letters patent or any expenses in connection with the prosecution of said applications or the recording of such assignments and any expenses such as charges for staff costs, travel, and other expenses incurred in the preparation and prosecution of application for letters patent, though payable by the SPONSOR, shall not constitute a part of the principal sum payable under this agreement, as specified in paragraph 2 hereof."

Since there is a dispute between the parties as to whether the staff of Battelle is ever working "for others," namely, sponsors, let us review the evidence on this subject, especially the work performed by Battelle's legal department and patent section after the sponsor indicates it will claim rights to an application for a patent, or a patent.

The committee offered in evidence the testimony of John Gray, as on cross-examinaion. Mr. Gray is general counsel for Battelle. His name appears first in the firm name of Gray, Mase & Dunson, which is registered in the U. S. Patent Office and acts as counsel for applicants for inventions originating from Battelle.

The committee also offered the testimony of Mr. Lawrence C. Kingsland, a patent attorney from St. Louis, Missouri, a former Commissioner of Patents for the U. S. Patent Office.

The committee offered, and the court admitted into evidence, its Committee's Exhibits 1 through 11, both inclusive, which we will briefly refer to.

Committee's Exhibits 1 and 2 are letters from the patent department of Battelle to The Wolf Machine Company, dated August 29, 1950, and February 22, 1951, respectively, with reference to a patent on a cloth-cutting machine. Committee's Exhibit 4 is a letter from the production research department of Battelle to The Wolf Machine Company, dated February 6, 1948, wanting to know if the Battelle patent department should proceed to prepare a patent application for the cloth-cutting machine.

Committee's Exhibit 11 is the complete file for Patent No. 2,658,032, issued November 3, 1953. It was an invention of Charles L. Faust and W. G. Hespenheide of Battelle, filed on June 11, 1949, through the law firm of Gray, Mase, Wildermuth & Dunson of Battelle, assigned on June 10, 1949, to Battelle, and reassigned on the same day by Battelle to The City Auto Stamping Company which had a sponsoring contract with Battelle. The preliminary patent search was dated November 26, 1947. Numerous letters and documents are in this file, including:

Committee's Exhibit 3, Letter dated June 17, 1948
Committee's Exhibit 5, Letter dated March 29, 1950
Committee's Exhibit 6, Letter dated March 31, 1950

In a letter dated May 19, 1949, from Charles L. Faust to counsel for the sponsor, there was enclosed a rough draft of a patent application, and the letter inquired if the sponsor would want Battelle's patent group to handle the filing and prosecution of the patent, or if the sponsor would prefer to have its own patent attorneys handle the case. The reply letter from counsel for sponsor to Mr. Faust, dated May 27, 1949, requested the patent people of Battelle to handle the filing and prosecution of the patent. The file contains numerous items of correspondence with reference to this patent, continuing up to February 22, 1954.

While this is an isolated case, it shows the manner in which it was handled from the date of the patent search, November 26, 1947, until delivery of a corrected patent on February 22, 1954, to the sponsor. The entire patent was handled by Battelle's law firm of Gray, Mase, Wildermuth & Dunson. In May 1949, arrangements were made for the patent to be secured for the sponsor, using the services of Battelle's patent section, although the pair of assignments from the inventor to Battelle and from Battelle to the sponsor were not dated and filed until June 1949, when the patent was issued. Further servicing was required and performed by the Battelle law firm up until February 1954.

Mr. John Gray, general counsel for Battelle, testified generally that under no circumstances does the present firm of Gray, Mase & Dunson receive compensation for preparing and filing patent applications other than from Battelle.

Mr. Gray identified Committee's Exhibit 11 as the complete file for Patent No. 2,658,032, for The City Auto Stamping Company. He admitted that the sponsor was billed for the services of the attorneys and members of the patent section of Battelle, and that the sponsor paid such bills. Mr. Gray estimated that about 25 applications a year have been prepared by Battelle, where sponsors paid for the services on monthly invoices submitted to the sponsors. In each case, while the application is carried in the name of the inventor, Battelle's law firm (now Gray, Mase & Dunson, which is registered to practice in the Patent Office) is named as the attorney having power of attorney.

Mr. Gray testified that he would refuse to produce any specimens of pending applications, on the ground it would be a violation of a confidential disclosure.

Counsel for Battelle agreed and stipulated that Committee's Exhibits 8 and 9, being reports of Battelle's law firm with regard to patents in the names of the inventors, were typical examples of the practice at the present date as to such documents.

Committee's Exhibit 7 is a complete set of invoices from Battelle to the joint sponsors of projects S-1033-10A and S-1033-10B, The National Publishing Company and The United States Playing Card Company. Each cosponsor was charged one half of the various charges made by Battelle in connection with the project. The invoices commence in July 1948, and continue to June 25, 1954.

The first invoice in sponsored project No. S-1033-10A covers patent work for the month of June 1948, for filing patent applications. The last invoice under sponsored project No. S-1033-10A is dated December 20, 1951.

The first invoice in sponsored project S-1033-10B is dated January 29, 1952, and covers the cost of recording assignments. The last invoice is dated June 25, 1954, to cover payment of recording fee and final fee on U. S. Patent No. 2,645,871.

Counsel for Battelle admitted that the sponsors for sponsored propects S-1033-10A and S-1033-10B were invoiced as shown in Committee's Exhibit 7, that the services shown were rendered and that the bills were paid by the sponsors.

The committee relied upon Committee's Exhibit 7 to serve as a typical example of one complete set of invoices made to sponsors in connection with a given project, which were paid for by the sponsors, to show that the invoices continued in the same manner from the beginning of the work on the applications to the time the final work on the patent was completed. The various invoices show that the sponsors early elected to take assignment of the patent and that the pairs of assignments were recorded in the middle of the entire period covered by the invoices.

After considering all the evidence relative to question (3) **For Whom The Work Is Performed,** we believe the evidence shows clearly that at the beginning of any research project the members of Battelle's staff, including members of the legal department and patent section, are working for Battelle. Any legal services performed at this early state of research are rendered for Battelle. This is true even though a sponsor has the right by its contract with Battelle to request the inventor and Battelle to assign to it any application for an invention and other rights to an invention, which may develop while Battelle is working on the project.

We hold that all legal services performed by members of the legal department and patent section of Battelle prior to the time any sponsor requests an assignment, whether by execution of a formal written election or by any other form of expressing its intent to acquire such invention, are, in fact, services rendered solely to Battelle.

We further hold that all such services rendered subsequent to the time the sponsor indicates its intent to acquire such invention are not rendered solely to Battelle.

(4) **IS SUCH WORK THE UNAUTHORIZED PRACTICE OF LAW**

Under conditions as they exist in the instant case, when are legal services performed by members of Battelle's legal department and patent section proper legal services, and when are they unlawful, or unauthorized?

As hereinbefore stated, there are a variety of practices which the courts have held to constitute the unauthorized practice of the law. It would serve no purpose to define any types not applicable to the facts here under consideration.

We have presented here the charge against a corporation which. employs persons who perform legal services for individuals and corporations **other than the employing corporation.**

In different court decisions, the elements of this situation, which render such services the unauthorized practice of the law, include:

1. The corporation could solicit legal work, while attorneys, under their oath, could not.

2. The corporation would serve as an intermediary between the attorney and his client.

3. The attorneys hired by the corporation would be subject to divided allegiance and conflict of interest, in that their primary loyalty would be to the corporation-employer, rather than to the sponsors or clients of the corporation.

Again, it has been held that proper practice of the law can take place only where:

1. There is an assurance of true legal competence.

2. There must exist a true confidential relationship between attorney and client.

3. The circumstances must be such as to assure absolute loyalty and undivided allegiance between attorney and client.

Another indictment of the type of practice revealed by the record in this case is that Battelle's use of its employed attorneys amounts to the practice of law as a commercial matter to make a "merchant's profit," rather than a limiting of the professional services of its attorneys to Battelle as client.

Considering all these concepts, in the light of the evidence before us, we conclude that the legal services performed by members of Battelle's legal department and patent section, which are rendered solely to Battelle, are not the unauthorized practice of law. Such services are fully compatible with recognized and proper attorney-client relationships between such attorneys and Battelle. The allegiance and loyalty of attorney to client is not questioned. There is no doubt as to the confidential relationship which exists between attorney and client under these conditions.

To what extent, if any, do these proper attorney-client relationships change when members of Battelle's legal department and patent section cease to render services solely to Battelle and begin to render services in whole or in part to sponsors?

We find that a different relationship is established as soon as the sponsor indicates its intent to acquire such invention. From that time on it is the sponsor who assumes the position of employer or owner, and to whom undivided loyalty is required in the establishment of a proper attorney-client relationship between it and an attorney. Such a relationship cannot exist between the sponsor and an attorney whose loyalty is already pledged to Battelle. Therefore, no attempt on the part of the sponsor or of Battelle, whether by contract or otherwise, to create a proper attorney-client relationship between the sponsor and an employee of Battelle can be recognized.

While the source of compensation paid to an attorney for his legal services is substantial evidence of loyalty between such source and the attorney, it is not the sole criteria of loyalty which must be present in any proper attorney-client relationship. For example, in the instant case, so long as the confidential relationship continues between Battelle and the attorneys it employs, such attorneys are not in a position to establish proper attorney-client relationship with sponsors. This is so

whether sponsors pay Battelle research costs, including staff costs, whether sponsors would agree to pay compensation direct to such attorneys, either in full or in part for services rendered, or whether the attorneys would agree to perform such services for sponsors gratuitously and rely solely on compensation paid to them by Battelle in the form of salary.

We hold that the provision in paragraph 4 of the Battelle-sponsor contract, hereinbefore set out, to the effect that Battelle, on request of the sponsor, will assign an application "through attorneys named by the sponsor," to the sponsor, does not authorize the sponsor to retain counsel for Battelle as its counsel to continue the legal work required to complete the application for the sponsor. Furthermore, even if either or both of the parties so construed the contract, such construction would be improper. No private contract can authorize the unauthorized practice of the law.

The evidence shows that in specific cases, and, presumably, in nearly all cases where members of Battelle's legal department and patent section have fully processed applications for patents in connection with research projects for sponsors, there has been a continuation of the services of such staff members, under the terms of the sponsor-Battelle contract, long after the sponsor has made a claim to such patent or invention.

We hold that all legal services so performed after the sponsors have made a claim to a patent or invention, including those alleged in the committee's application filed November 16, 1957, have been an unauthorized practice of the law, that the same should be restrained, and that Battelle should be enjoined from so engaging in the unauthorized practice of law.

Battelle is, accordingly, enjoined from further engaging in the unauthorized practice of law for sponsors, through its employees in the legal department or patent section of Battelle.

The court will render a separate decision with reference to the issues joined in the case of Battelle Memorial Institute v. Merritt W. Green et al, case number 197,718, which was consolidated herewith for hearing.

Judgment accordingly.

### APPENDIX
### APPLICATION

1. This application is made by and on behalf of the Committee of this Court heretofore appointed on the 4th day of November, 1957, with authority and instructions to make an inquiry and investigation as to whether persons, firms or corporations are engaged in the unauthorized practice of law in this county, and is made in the discharge of the said responsibilities of such Committee.

2. Battelle Memorial Institute, hereinafter called "Battelle," is a corporation not for profit organized and existing under the laws of the State of Ohio for the purpose of engaging in the business of conducting research, making discoveries and inventions and generally accomplishing educational, scientific, charitable and benevolent purposes.

3. Acting through agents, employees and attorneys Battelle con-

tracts to, and does, render services for others as hereinafter described.

4. Battelle is not qualified or authorized by any lawful authority to engage in the practice of law. Notwithstanding the fact that Battelle is not qualified to act as an attorney at law, and is not admitted to practice law in the State of Ohio, it has on divers occasions and for several years last past engaged in the practice of law by employees and agents and by attorneys hired by it for that purpose, and Battelle will, with reasonable certainty, through such employees, agents and salaried attorneys, employed for that purpose, continue in said practice of law, as hereinafter set forth.

5. Battelle conducts research for individual sponsors under contracts, a copy of which is hereby attached and made a part hereof as exhibit A, in which payment to be made by the sponsor and other terms are set forth.

6. Battelle conducts its research through employees, with whom it has employment contracts, a copy of which is hereby attached and made a part hereof as exhibit B. Such contracts recognize that the employees have no equitable or beneficial interest in inventions discovered during their employment with Battelle, and each employee therefore agrees to assign any such invention to Battelle or to the appropriate sponsor, as Battelle directs.

7. The contract between Battelle and each sponsor further recognizes that Battelle has no equitable or beneficial interest in such inventions made during sponsored projects. If an employee makes an invention during such a sponsored project, the sponsor is notified. If the sponsor wishes to acquire the invention, Battelle, through its own employees as aforesaid, will file and process a patent application in the United States Patent Office upon the application of the employee inventor, and upon the issuance of a patent thereon will assign the patent to the sponsor. If the sponsor elects so to do, it is entitled under its contract with Battelle to process such patent application through attorneys named by it, but in the absence of such election the work is done by employees of Battelle as aforesaid. For the services of its employees in processing such patent applications, and in the preparation of documents relating thereto, Battelle charges fees to its sponsors in addition to and not as a part of those received under the research contract.

8. The services which Battelle renders to its sponsors as aforesaid, by means of attorneys and other employees on its payroll, and for which it makes a charge, include the rendering of opinions as to the patentability of inventions; preparing applications for letters patent; preparing amendments to applications for letters patent; preparing affidavits for use in connection with patent applications and the processing thereof; and preparing assignments for transferring title in patent applications and patents, rendering opinions on the validity of patents, rendering opinions on foreign laws, rendering opinions on the provisions in intergovernmental treaties, and drafting of license agreements for rights under patents.

9. Battelle holds itself out as being legally qualified and competent to render opinions concerning the patentability of inventions, and to

prepare patent applications, amendments to patent applications, affidavits with respect to patent applications and to draft contracts and assignments with respect to patents and patent applications, rendering opinions on the validity of patents, rendering opinions on foreign laws, rendering opinions on the provisions in intergovernmental treaties, and drafting of license agreements for rights under patents.

10. The preparation and prosecution of applications for letters patent entails the drafting of specifications and claims in language which has its basis in court decisions which interpret the patent statutes.

11. During the prosecution of patent applications amendments are frequently necessary. Each amendment usually includes the preparation of a brief, together with citations of cases, and the redrafting of claims in the light of disclosures in prior patents which may be cited by the examiner. The language used in redrafting the claims to protect legal rights must be chosen with due regard for court decisions, and with due regard for the avoidance of estoppel which may subsequently be raised in an action for infringement in a United States District Court.

12. Where two or more patent applications are pending in the Patent Office claiming or appearing to claim substantially the same subject matter, an interference is declared by the examiner. This is a contest to determine priority of invention and the procedure involves the preparation of affidavits, the taking of testimony, the preparation of briefs and argument before a Board of Interference Examiners.

13. From a decision denying patentability upon an application, or from an adverse decision in an interference, an appeal lies either to the Court of Customs and Patent Appeals in the District of Columbia, or to the United States Court for the District of Columbia. The record made in the Patent Office is used on the appeal in the Court of Customs and Patent Appeals, and no other record may be used. In the District Court the applicant or petitioner may use the record made in the patent office or he has the right to make a new record.

14. From a decision by the Court of Customs and Patent Appeals, a petition for certiorari lies to the United States Supreme Court. In such case the petition must be based upon the record made in the Patent Office. From a decision by the District Court, an appeal may be taken to the Circuit Court of Appeals and from the decision of the latter Court a petition for certiorari may be filed with the Supreme Court of the United States.

15. After a patent has been issued an action may be brought in an appropriate United States District Court for infringement. In such an action the record made in the Patent Office is scrutinized by the Court for estoppel by file wrapper limitations. Accordingly, the prosecution of the patent application before the Patent Office in every case constitutes the building of a record to be used in a subsequent court action.

16. Frequently affidavits are prepared and filed in connection with the prosecution of a patent application to show evidence of utility and value of the invention. In drafting such affidavits it is essential that the evidence be considered in the light of court decisions relating to the questions of utility, novelty and commercial success. Such affidavits be-

come a part of the record in the Patent Office to be used as hereinbefore described.

WHEREFORE, Petitioners, as officers of this Court and of the Supreme Court of Ohio, and as members of the Committee heretofore appointed by this Court to investigate the unauthorized practice of law in Franklin County, and to take appropriate action with respect thereto, pray for an order restraining and enjoining said Battelle Memorial Institute from engaging in the practice of law, and for such other orders as may be appropriate in the premises.